**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

JANET L. F.,

Plaintiff,

v. Civ. No. 25-1156 MIS/GBW

FRANK BISIGNANO,
*Commissioner of the*
*Social Security Administration,*

Defendant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER comes before me pursuant to the Court's Order of Reference (*doc. 16*) and Plaintiff's Motion to Reverse (*doc. 9*) the decision of the Social Security Agency ("SSA") to deny Plaintiff Social Security Disability Insurance benefits ("SSDI"). For the reasons discussed below, I recommend DENYING Plaintiff's Motion, and AFFIRMING the judgment of the SSA.

## I. PROCEDURAL HISTORY

Plaintiff filed an initial application for SSDI on August 16, 2018, alleging disability beginning March 1, 2017. Administrative Record ("AR") at 74-75. Plaintiff's application was denied on initial review on December 19, 2018, and again on reconsideration on June 12, 2019. AR at 104, 111. On May 5, 2020, a hearing was held by an Administrative Law Judge ("ALJ"). AR at 135, 497. The ALJ issued an

unfavorable decision on July 21, 2020. AR at 497-510. The Appeals Council ("AC") upheld the ALJ's decision on December 10, 2020. AR at 1.

Plaintiff then appealed to this Court on January 26, 2021. *See* Civ. No. 21-67 KWR/KRS, *doc. 1*. The case resulted in an unopposed remand pursuant to 42 U.S.C. § 405(g). AR at 478-79. Plaintiff then attended a remand hearing on September 13, 2022, AR at 409-37, which resulted in a denial on October 4, 2022, AR at 518-29. Plaintiff appealed to this Court again on January 30, 2023, which was likewise voluntarily remanded by the Commissioner pursuant to 42 U.S.C. § 405(g). *See* Civ. No. 23-85 MLG/SCY, *docs. 1, 17*; AR at 1029. Plaintiff attended yet another remand hearing on January 18, 2024, AR at 1006-26, which resulted in a denial on January 30, 2024, AR at 1041-52. Plaintiff filed written exceptions to the AC on February 16, 2024, AR at 1160-64, which resulted in a remand on March 13, 2025, AR at 1062-66. Plaintiff attended a third remand hearing on July 17, 2025, AR at 989, which resulted in another denial on August 13, 2025, AR at 959-77.

Plaintiff did not file additional written exceptions to the AC, and the AC did not otherwise assume jurisdiction, making the August 2025 decision the final decision of the Commissioner for purposes of judicial review. *See* C.F.R. §§ 404.984(d), 404.981. Plaintiff then filed the present action on November 20, 2025. *Doc. 1*.

## II. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a court may review a final decision of the Commissioner only to determine whether it (1) is supported by "substantial evidence" and (2) comports with the proper legal standards. *Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 800-01 (10th Cir. 1991). "In reviewing the ALJ's decision, we neither reweigh the evidence nor substitute our judgment for that of the agency." *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotation marks omitted).

"Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Casias*, 933 F.2d at 800 (internal quotation marks omitted). "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). "[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.* at 1010. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

## III. ALJ EVALUATION

### A. Legal Standard

For purposes of SSDI, an individual is disabled when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). To determine whether a person satisfies these criteria, the SSA has developed a five-step test. *See* 20 C.F.R. § 404.1520. If the Commissioner finds an individual disabled at any step, the next step is not taken. *Id*. § 404.1520(a)(4).

At the first four steps of the analysis, the claimant has the burden to show: (1) he is not engaged in "substantial gainful activity"; (2) he has "a severe medically determinable physical or mental impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and that either (3) his impairment(s) meets or equals one of the "Listings" of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." *Id.* § 404.1520(a)(4)(i–iv); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

Step four of this analysis consists of three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ determines the claimant's residual functional capacity ("RFC") "based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). A claimant's RFC is "the most [he or she] can still do despite [physical

and mental] limitations." *Id*. § 404.1545(a)(1). Second, the ALJ "determine[s] the physical and mental demands of the claimant's past relevant work." *Winfrey*, 92 F.3d at 1023. "To make the necessary findings, the ALJ must obtain adequate 'factual information about those work demands which have a bearing on the medically established limitations.'" *Id.* at 1024 (quoting Social Security Ruling (SSR) 82-62, 1982 WL 31386, at *3 (Jan. 1, 1982)). Third, the ALJ determines whether, in light of the RFC, the claimant is capable of meeting those demands. *Id*. at 1023, 1025.

If the ALJ concludes that the claimant cannot engage in past relevant work, he or she proceeds to step five of the evaluation process. At step five, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity, age, education, and work experience. *Grogan*, 399 F.3d at 1261.

**B. <u>The ALJ's Decision</u>**

On August 13, 2025, the ALJ issued a decision denying Plaintiff's application for SSDI benefits. *See* AR at 959-77. In denying Plaintiff's application, the ALJ applied the five-step sequential analysis. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of March 1, 2017, through her last date insured of June 30, 2019. AR at 962.[1]

At step two, the ALJ found that through the date last insured, Plaintiff had the

[1] Plaintiff's case only concerns the limited period from March 1, 2017, until June 30, 2019. *Doc. 9* at 26.

following severe impairments: degenerative disc disease; hernia; degenerative joint disease of the left knee with MCL tear; obesity; and depression. AR at 962. The ALJ found that Plaintiff had additional non-severe medical impairments including the presence of thyromegaly without any noted complications, myofascial pain syndrome in the left shoulder managed with trigger point injections, and carpal tunnel syndrome. AR at 962-63. The ALJ also noted additional acute impairments such as COVID-19 infection, appendicitis, and right trochanteric bursitis, but these occurred after the date last insured and did not cause any limitations during the relevant period. AR at 963.

At step three, the ALJ found that Plaintiff's severe impairments—both individually and in combination—did not meet or equal the severity of an impairment in the Listings. AR at 963. She determined that Plaintiff had a mild limitation in understanding, remembering, or applying information; a mild limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and a mild limitation in adapting or managing oneself. AR at 964-65. The ALJ determined that these limitations did not satisfy the Paragraph B criteria for a finding of disability, nor did they satisfy the Paragraph C criteria because Plaintiff "received fairly minimal mental health treatment during the relevant period and did not demonstrate evidence of marginal adjustment in her activities of daily living." AR at 965.

At step four, the ALJ found Plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) except as follows. The claimant could occasionally climb ramps and stairs, stoop, crouch,

> kneel, and crawl. She could never climb ladders, ropes, or scaffolds, work in high unprotected places, or work in proximity to moving mechanical parts. She could have no concentrated exposure to extreme cold. She could occasionally use bilateral foot controls. She could understand, remember, and carry out simple instructions and make simple decisions. She could not perform production paced work, such as work on an assembly line or work with an hourly production quota.

AR at 966. In making this finding, the ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms. AR at 969. However, Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. AR at 969.

The ALJ found partially persuasive the opinions of Dr. Roberta Herman, Dr. Matheen Khan, Dr. Richard Sorensen, Dr. Joy Kelley, and Dr. Michael Cummings, noting that the opinions were generally consistent with the record, but certain parts of their opinions were not as well supported. AR at 972-75. The ALJ found the opinions of Dr. Mark Werner and Dr. Karl Boatman to be not fully persuasive because their recommendations regarding exertional limitations were somewhat inconsistent with medical evidence. AR at 973. Finally, the ALJ found the opinions of Dr. Elizabeth Chiang and Dr. Stephen Scott to be unpersuasive because neither of them had the opportunity to review relevant evidence establishing that Plaintiff was experiencing depressive symptoms prior to the date last insured. AR at 973.

At step five, the ALJ considered Plaintiff's age, education, work experience, and

RFC and determined that she could still perform jobs that exist in significant numbers in the national economy. AR at 976. Specifically, the ALJ found that Plaintiff could perform the requirements of three representative occupations: (1) Cashier (DOT 211.462-010); (2) Mail Clerk (DOT 209.687-026); and (3) Rental Clerk (DOT 295.367-026). AR at 976. Accordingly, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, at any time from March 1, 2017, the alleged date of onset, through June 30, 2019, the date last insured. AR at 977.

## IV. Parties' Positions

Plaintiff asserts that the ALJ erred by (1) failing to give specific, legitimate reasons for rejecting Dr. Cummings' opinion that Plaintiff had marked limitations adapting in a work setting, and (2) adopting Vocational Expert ("VE") testimony based exclusively on the SkillTran Job Browser Pro software. *Doc. 9*.

Defendant responds that the ALJ's decision should be affirmed, because (1) the ALJ properly considered Dr. Cummings' opinion, articulated the supportability and consistency factors, and made a reasonable determination that it was only partially persuasive; and (2) the VE testimony comported with Social Security Ruling ("SSR") 24-3p. *Doc. 18*.

Ultimately, I recommend that the Court deny Plaintiff's motion and affirm the judgment of the SSA.

## V. ANALYSIS

### A. The Opinion of Dr. Michael Cummings

Plaintiff argues that remand is warranted because the ALJ "substituted her lay opinion, speculation, and credibility judgment for that of Dr. Cummings," second-guessed Dr. Cummings' opinion, "cited no medical opinions and provided no explanation to contradict Dr. Cumming[s'] medical opinion," and overall came to a decision regarding the opinion that was unexplained and conclusory. *Doc. 9* at 20. The ALJ's decision concerning Dr. Cummings' opinions was therefore rendered "beyond meaningful review." *Id.; see Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000).

Dr. Cummings conducted an assessment of Plaintiff on November 13, 2018, and opined, *inter alia*, that:

> [Plaintiff] is not limited in her ability to understand and remember very short and simple instructions. She is moderately limited in understanding and remembering detailed or complex instructions. She is moderately limited in her ability to carry out instructions or attend and concentrate. She is moderately limited in her ability to work without supervision. Her ability to interact with the public, coworkers, and supervisors is mildly limited. Her ability to adapt to changes in the workplace, be aware of normal hazards and react appropriately is markedly limited. Her ability to use public transportation or travel to unfamiliar places is not limited.

AR at 394. The ALJ found Dr. Cumming's opinion to be partially persuasive, noting that his assessment of moderate limitations in concentration, persistence, and pace appeared well supported, but that the marked limitation he found in Plaintiff's ability to adapt to changes and be aware of hazards was not supported by other evidence in

the record. AR at 974.

Specifically, the ALJ found that a marked limitation was not supported by Petitioner's ability to engage with the examination questions independently, nor was it consistent with her reported activities of daily living. AR at 974. The ALJ also noted that there was "no evidence within the claimant's treatment records of such severe limitations, as the claimant appears able to request help from treating providers when her symptoms worsen and to express how increased stress or changes affected her ability to cope." AR at 975.

Plaintiff argues that the ALJ did not properly reject Dr. Cummings' opinion and contends that remand is necessary so that the ALJ can either adopt the limitation or "give specific, legitimate reasons for rejecting [it]." *Doc. 9* at 22. The undersigned finds that under our deferential standard of review, the ALJ properly considered Dr. Cummings' opinion and crafted an RFC accordingly. *See Jeri A. C. v. Kijakazi*, 2022 WL 3868150, at *5 (D. Kan. Aug. 30, 2022) ("It is not this court's nor the parties' place in substantial evidence review to decide the 'best' understanding of [the doctor's] opinion. Rather, it is the court's duty to determine whether the ALJ's understanding is supported by the evidence.").

When evaluating the persuasiveness of medical opinions like the one given by Dr. Cummings, the ALJ must consider several factors, the most important of which are (1) supportability and (2) consistency. *See* 20 C.F.R. §§ 404.1520c(a), (c). Supportability

examines how close the connection is between a medical opinion and the objective medical evidence and supporting explanations. *Id.* § 404.1520c(c)(1). Consistency compares the medical opinion to evidence from other sources. *Id.* § 404.1520c(c)(2).

The ALJ discussed the supportability of Dr. Cummings' "marked limitation" findings by comparing Plaintiff's demeanor and abilities during the examination as well as her stated daily activities with Dr. Cummings' final conclusion. AR at 974-75. The ALJ found that Plaintiff's "ability to engage with the examination questions independently" and her reported activities of daily life described in hearing testimony did not support the marked limitation in adapting to changes in the workplace, being aware of normal hazards, and reacting appropriately. AR at 974. The ALJ also noted that Dr. Cummings did not find any limitation in Plaintiff's ability to use public transportation or travel to unfamiliar places. AR at 974. While she did not find Dr. Cummings' opinion regarding alleged marked limitations to be supported, she did find the rest of his opinion persuasive and noted that the cognitive tests completed by Plaintiff supported a moderate limitation in concentrating, persisting, or maintaining pace, and limiting Plaintiff to simple instructions and decisions. AR at 974.[2]

The ALJ discussed the consistency of Dr. Cummings' "marked limitation"

[2] Plaintiff also contends that the ALJ did not properly consider Plaintiff's MOCA score, borderline BCSE performance, subthreshold fund of knowledge and reported problems with crying spells, sleep, depression, anxiety and suicidal ideation. *Doc. 19* at 2-3. However, the ALJ did discuss these tests and results in her decision. *See* AR at 971.

findings by comparing his findings to other evidence in the record, such as Plaintiff's ability to request help from medical providers and her ability to express how increased stress or changes affect her ability to cope. AR at 975. She found that these abilities were inconsistent with a marked limitation on safely assessing surroundings or coping with change. AR at 975. Accordingly, the ALJ found that a marked limitation was not consistent with the record evidence.

While the ALJ could have been more specific in her discussion, her decision meets the Tenth Circuit's minimum articulation requirement, and the undersigned can sufficiently follow the ALJ's reasoning. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) ("Where . . . we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal."). Moreover, where the RFC is supported by reasonable evidence, the court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Lax*, 489 F.3d at 1084 (quotation and citation omitted). Applying this standard, the undersigned finds that the ALJ applied the correct legal standards in analyzing Dr. Cummings' medical opinion, and her decision was supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Casias*, 933 F.2d at 800.

**B. <u>The VE's Use of SkillTran Job Browser Pro</u>**

Plaintiff next argues that the ALJ committed reversable error by adopting unreliable VE testimony based solely on the SkillTran Job Browser Pro software. *Doc. 9* at 21-25. Specifically, Plaintiff alleges that the VE's testimony was insufficient to support a denial at step five because the VE only based her opinion on Job Browser Pro, rather than other sources, and never established that the software was reliable. *Id*.

Under SSR 24-3p, VEs are allowed to use various sources of occupational information, provided that the sources are reliable. SSR 24-3p, 89 FR 97158-01, at *97159 (Jan. 6, 2025) ("VEs and VSs may use any reliable source of occupational information that is commonly used by vocational professionals and is relevant under our rules, along with their professional knowledge, training, and experience.").

The VE testified at the July 2025 hearing that when providing her testimony she relied on "the Dictionary of Occupational Titles" ("DOT") and that "[a]nything that [*sic*] specifically addressed in the Dictionary is going to be based on my professional experience as well as my education. For any job numbers used today, I use SkillTRAN, specifically Job Browser Pro." AR at 998. The VE further testified that the one change she would "make to any numbers is selecting full-time positions only" and that she "use[d] the numbers specific to each DOT code." AR at 998; *see also* AR at 1003 ("I'm using the numbers specific to each DOT code.").

Plaintiff alleges that this testimony shows that the VE's calculation of job

numbers was based *solely on* Job Browser Pro. *See doc. 9* at 24. Though the undersigned agrees the wording is poor, the undersigned would read the testimony as establishing that the VE used Job Browser Pro *in addition to* the DOT and her experience and education. Job Browser Pro used numbers specific to each DOT code and anything that was addressed in the Dictionary was in part based on the VE's education and professional experience. *See* AR at 998. Accordingly, the undersigned would find that the VE's testimony was not based exclusively on SkillTran Job Browser Pro, but rather on the software in conjunction with her education, experience, and the DOT.

Plaintiff next attacks the reliability of Job Browser Pro, asserting that it rests on an illogical equal distribution model and that the VE did not provide another reliable methodology. *Doc. 9* at 25. According to the VE, SkillTran Job Browser Pro is a software that is commonly utilized and relied upon by rehabilitation counselors and vocational experts. AR at 998; *see also Chavez v. O'Malley*, 96 F.4th 1016, 1024 (7th Cir. 2024) (describing Job Browser Pro as a "generally accepted methodology"); *Purdy v. Berryhill*, 887 F.3d 7, 14 (1st Cir. 2018) ("SkillTRAN's software has been recognized by at least one district court to be widely relied upon by vocational experts in estimating the number of relevant jobs in the national economy." (citation omitted)). Despite the program's wide use and acceptance, Plaintiff argues that because the VE admitted that

the software uses the "equal distribution method"[3] among other methods that she did not describe, the VE "never provided a well-accepted methodology underlying the source" and thus her testimony did not comply with SSR 24-3p and cannot form the basis of a denial at step five. *Doc. 19* at 5.

While the VE could have done more to explain the other methods used by Job Browser Pro at the hearing, *see* AR at 1000-03, the undersigned finds that the ALJ did not err by relying on the VE's testimony. The VE testified that she used numbers specific to each DOT code, that the software used methodologies other than the equal distribution method, and that Job Browser Pro was commonly utilized and relied upon by VEs. AR at 998-1003. "She testified, in other words, to a reliable and practical basis of fact on which analysis was performed, and to a wide reputation for reliability." *Purdy*, 887 F.3d at 16. Under our deferential standard of review, the undersigned finds that there are sufficient indicia of reliability to rely on the VE's testimony and that the ALJ's findings were supported by "more than a mere scintilla" of evidence. *Casias*, 933 F.2d at 800.

Accordingly, the undersigned finds that the ALJ properly relied on the VE testimony regarding the number of jobs in the national economy.

---

[3] The "equal distribution method" assumes that jobs are equally distributed across all associated DOT codes. This distribution method can therefore overcount rare jobs and undercount popular ones. *See doc. 9* at 24; *Milner v. Kijakazi*, 2022 WL 1125402, at *9 (D.N.M. Apr. 15, 2022)

## VI. CONCLUSION

For the foregoing reasons, I recommend that Plaintiff's Motion to Reverse and Memorandum Brief (*doc. 9*) be DENIED and the Commissioner's decision be AFFIRMED.

GREGORY B. WORMUTH
CHIEF UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**